UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEITH E. WOODHOUSE,

    Petitioner,

    v.

H. B. ANGLEA, Warden,

    Respondent.

Case No. 18-cv-01874-YGR (PR)

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS**

## I. INTRODUCTION

Petitioner Keith E. Woodhouse, a state prisoner, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2013 conviction of committing 30 lewd or lascivious acts on a child under the age of 14 years. *See People v. Woodhouse*, No. H040443, 2016 WL 3126236, *1 (Cal. Ct. App. May 26, 2016).

The charged crimes involved nine young girls who attended a school program for which Petitioner was working. *See id.* The evidence presented to the jury included a videotape of the two-hour interview by San Jose Police Department Detective Erik Martin (in which Petitioner made multiple admissions) as well as an apology letter written by Petitioner. *See id.*

The trial court sentenced Petitioner to a total term of thirty years to life in state prison. *See id.*

The Court issued an Order to Show Cause directing Respondent to answer the instant petition. Dkt. 5. Respondent now moves to dismiss the petition on the basis that the claim Petitioner raised in the petition was not fairly presented to the California Supreme Court and therefore is unexhausted. Dkt. 10. Petitioner has filed an opposition to the motion, and Respondent has filed a reply. Dkts. 11, 12.

For the reasons discussed below, the Court hereby GRANTS Respondent's motion to dismiss and DISMISSES the petition without prejudice to Petitioner's returning to federal court after exhausting his state court remedies.

## II. DISCUSSION

### A. Applicable Law on Exhaustion of State Judicial Remedies

An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court may not be granted unless the prisoner has first exhausted state judicial remedies, either by way of a direct appeal or in collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every issue he or she seeks to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987). The petitioner has the burden of pleading exhaustion in his or her habeas petition. *See Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981).

The exhaustion requirement is satisfied only if the federal claim (1) has been "fairly presented" to the state courts, *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations omitted); and (2) no state remedy remains available, *see Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). If available state remedies have not been exhausted as to all claims, the district court must dismiss the petition. *Duckworth v. Serrano*, 454 U.S. 1, 3-5 (1981). Before a petitioner may challenge either the fact or length of his confinement in a habeas petition in this Court, he must present to the California Supreme Court any claims he wishes to raise in this court. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982) (holding every claim raised in federal habeas petition must be exhausted). If available state remedies have not been exhausted as to all claims, the district court must dismiss the petition. *See id.* at 510; *Guizar v. Estelle*, 843 F.2d 371, 372 (9th Cir. 1988).

As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts in the manner required by the state courts, thereby affording the state courts a meaningful opportunity to consider allegations of legal error. *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005). A claim is "fairly presented" only if the petitioner either referenced specific provisions of the federal constitution or federal statutes, or cited to federal or state case law analyzing the federal issue. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

### B. Background

The record shows that on direct appeal, Petitioner raised the following claims in the

California Court of Appeal: (1) the trial court erroneously denied his motion to exclude his statements made during police questioning because he did not knowingly, voluntarily, and intelligently waive his *Miranda*[1] rights; (2) the trial court erred by admitting evidence pursuant to California Evidence Code § 1108; and (3) cumulative error. *Woodhouse*, 2016 WL 3126236, *1. On May 26, 2016, the state appellate court affirmed the judgment. *Id.*, at *13.

On March 27, 2012, Petitioner filed a petition for review in the California Supreme Court. *See* Resp't Ex. B; Dkt. 10-1 at 29-58.[2] In that petition, out of the three claims he raised in his state appellate court, Petitioner only raised his claim that the trial court erroneously denied his motion to exclude his statements made during police questioning because he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights. *Id.* On August 10, 2016, the state supreme court denied the petition for review. *See* Resp't Ex. C; Dkt. 10-1 at 63.

In 2017, Petitioner filed a state habeas petition in the Santa Clara County Superior Court, alleging two claims: (1) the prosecution suppressed evidence favorable to the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) the trial court erred by admitting evidence pursuant to California Evidence Code § 1108. Dkt. 10-1 at 81-84. On August 24, 2017, the state superior court denied the petition. *Id.* at 4. Petitioner raised the same claims in the state appellate and supreme courts, which denied the state habeas petitions on October 13, 2017 and January 17, 2018, respectively. Dkt. 10-1 at 86, 88.

On March 27, 2018, Petitioner filed this instant federal petition, alleging only one claim as follows: "Petitioner was denied his right to terminate a police interrogation and opt for an attorney's presence." Dkt. 1 at 5. In essence, Petitioner is claiming that the trial court erred in admitting statements he made during the interrogation, which occurred after Petitioner stated, "[a]m I gonna need like a lawyer," an alleged invocation of his right to counsel, and in violation of *Miranda*. *See id.* at 6-8. Attached to the petition is the transcript of Petitioner's January 26, 2011 interview, which includes the following portion of the interview during which he asked Detective

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

3

Martin if he was going to need an attorney after being asked about his interactions with the alleged victims and after he had already made multiple admissions:

| | | |
|---|---|---|
| MARTIN | | What else happens? |
| WOODHOUSE | | Ah, I just don't see it happenin'. Am I gonna need like a lawyer? |
| MARTIN | | I'm just the fact finder. You've got to make your own decisions. You know what I mean? |
| WOODHOUSE | | Right. |
| MARTIN | | My – my job is to – to figure out. You know it's kind of weird. Ah, you've got those guys that go out and hunt and fish for a living. |
| WOODHOUSE | | Mm-hm. |
| MARTIN | | Ah, that's their job. They go out and hunt and fish. If they were gonna ask you, hey, do I need a fishing rod, the answer's probably easy to say, yeah. But you need to make your own decisions. . . . . |

Dkt. 1, Ex. B (Clerk's Transcript); CT 1122. The record shows that Detective Martin then continued to ask Petitioner questions about his interactions with the alleged victims, during which Petitioner made more admissions. *See* Dkt. 1, Ex. B; *see also* Resp't Ex. F; Dkt. 10-1 at 158-182; CT 1122-1146. Afterwards, Petitioner wrote an apology letter. *See Woodhouse*, 2016 WL 3126236, *1. Petitioner claims that Detective Martin "utilized coercion to pressure [Petitioner] into writing a confession to acts beyond the scope of the probable cause [Detective Martin] previously obtained." Dkt. 1 at 8. Petitioner, who claims to have not had any prior criminal record, alleges that Detective Martin "convinced [Petitioner] into writing out a confession to much more serious felonies despite Petitioner exclaiming his need for a lawyer and [Detective] Martin's deliberate confusing response to such requests with a fishing expedition example – instead of the lawful procedure to cease and end questions." *Id.* at 7.

**C. Analysis**

In the instant motion to dismiss, Respondent argues that Petitioner's claim in the instant petition—that his statements made to the police after he invoked his right to counsel should have been suppressed—is based on a legal theory and a factual basis that were not fairly presented to

4

the California Supreme Court. Dkt. 10 at 2-6. Specifically, Respondent argues as follows:

> Petitioner's argument before the California Supreme Court was that the detective who conducted the interrogation, made comments at the time he gave petitioner his *Miranda* warnings, that allegedly vitiated those warnings. The argument petitioner raises now is based on matters occurring almost 70 transcript pages later in the questioning and involves an analysis of whether petitioner clearly invoked his right to counsel after having agreed to speak to the detective.

*Id.* at 2 (footnote omitted).

As mentioned above, when interpreting a petitioner's claims for relief, the Court must be mindful of the exhaustion requirement under AEDPA. *See* 28 U.S.C. § 2254(b), (c); *Rose*, 455 U.S. at 515-16. The Supreme Court has explained that:

> 28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made. In addition, the habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim.

*Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curium) (citations omitted).

"[M]ere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Constitutional claims are not fairly presented to the state courts and therefore are not exhausted if, for example, the claims in the federal petition and those presented to the state courts (1) arose under different federal constitutional provisions (including different clauses in the same constitutional amendment, e.g., the due process and equal protection clauses of the Fourteenth Amendment), *see Brown v. Cuyler*, 669 F.2d 155, 159 (3d Cir. 1982), (2) arose under the same constitutional provision but are logically distinct or are based on different and unrelated lines of precedent, *see Anderson v. Harless*, 459 U.S. 4, 6 (1982); or (3) one claim relied on state law while the other relied on federal law, even if the state and federal provisions and standards are similar, *see Peterson*, 319 F.3d at 1159-61.

Here, Respondent argues that the claims Petitioner asserted in his state and federal petitions are logically distinct from each other such that the state supreme court did not have an opportunity to address the claim presented in the federal petition. *See* Dkt. 10 at 2-6. Thus, it seems that out of the three examples above showing how to determine whether federal claims have

5

been fairly presented to the state courts, Respondent has focused on the second one, i.e., that the claim presented in the instant petition and those presented to the state courts *arose under the same constitutional provision but are logically distinct*. *See id.* at 5-6 (citing *Anderson*, 459 U.S. at 6 ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.")). Specifically, Respondent argues as follows:

> The argument petitioner raised to the California Supreme Court was directed to whether the detective's comments at the beginning of the interview vitiated the *Miranda* warnings. That issue is not only different from the one he raises here, but it also involves a different portion of the interview. Moreover, the issue petitioner raises here requires an analysis of whether petitioner unambiguously invoked his right to counsel after having waived his *Miranda* rights. *See, e.g.*, *Ber[g]huis v. Thompkins*, 560 U.S. 370, 385 (2010); *Davis v. United States*, 512 U.S. 452, 459-461 (1994). That is not the analysis that applies to whether the initial comments vitiate the *Miranda* warnings.

*Id.* at 6 (brackets added).

The Court agrees with Respondent that the factual basis for the claim and legal theory Petitioner raises in his federal petition were not fairly presented to the California Supreme Court. The Court notes that Petitioner filed a state habeas petition in the California Supreme Court, in which he argued that the prosecution had failed to disclose evidence and that the trial court erred by admitting evidence pursuant to California Evidence Code § 1108, but he did not raise any issue pertaining to the admission of his statements. *See* Resp't Ex. D; Dkt. 10-1 at 67-68. As shown above, Petitioner raised a *Miranda* claim on direct appeal relating to the trial court erroneously admitting his statements made during police questioning because he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights. *See* Resp't Exs. A, B; *Woodhouse*, 2016 WL 3126236, *6-10; Dkt. 10-1 at 33-34. Specifically, in his petition for review, Petitioner claimed that the state appellate court rejected his argument that Detective Martin

> expressly, consciously and deliberately minimized the importance of the *Miranda* rights that he had just provided to [Petitioner] in the following ways: (1) by telling [Petitioner] that his *Miranda* rights were no "big deal," (2) by agreeing with [Petitioner's] view that *Miranda* advisements only apply to individuals under arrest and then reminding [Petitioner] that he had not been arrested, and (3) by telling [Petitioner] a bizarre and inapt story about a scenario when *Miranda* advisements are applicable.

6

Dkt. 10-1 at 33-34. This argument was based on a colloquy during the beginning of the interview in which Detective Martin responded to Petitioner's belief that *Miranda* rights are given when one is arrested, by describing a Hollywood portrayal of an arrest after a chase.[3] *See Woodhouse*, 2016 WL 3126236, *8. Meanwhile, in the instant petition, Petitioner argues that he was "denied his right to terminate a police interrogation and opt for an attorney's presence." Dkt. 1 at 5-7. While this claim also involves an alleged *Miranda* violation, it seems that Petitioner is arguing that the trial court erred in admitting the statements made during the interrogation which occurred after Petitioner allegedly invoked his right to counsel by stating, "Am I gonna need like a lawyer?" *See id.* Such a claim is "logically distinct" from the *Miranda* claim Petitioner raised on direct appeal. *See Anderson*, 459 U.S. at 6. The Court notes that Petitioner did not base his argument on direct appeal on the same theory he raised in the instant petition—that he sought to terminate the interview by invoking his right to an attorney. More importantly, the statement at issue in his claim in the instant petition ("Am I gonna need like a lawyer?") was made in the middle of the

---

[3] The state appellate court included the following background relating to his *Miranda* claim on direct appeal:

> At the beginning of the interview at the police department, Detective Martin gave complete *Miranda* warnings to defendant. After each *Miranda* advisement, the detective asked defendant whether he understood; defendant responded yes each time. After giving the *Miranda* warnings, Detective Martin indicated that the advisements would protect both of them, and he said in part, "I just want to make sure you understand your rights. Okay? Not a big deal . . . ." Defendant stated, "Well usually the *Miranda*'s read for arrested [sic]." The detective asked, "Have you been arrested?" Defendant replied no.
>
> Detective Martin indicated that the Hollywood version was not accurate. He stated: "Hollywood basically . . . they pull somebody over. The guy takes off runnin'. He jumps over a fence." The detective continued: "They jump over the fence. They send their dogs at 'em. And while they're beatin' on him they're reading him his rights . . . . [T]hat's Hollywood's version . . . . [M]y version is . . . I need to ask you some questions. And . . . I need to make sure that you understand your constitutional rights." Defendant said, "Right." The detective said, ". . . right? Okay?" Defendant replied, "Yes, understand, yes." Defendant said, "Good. Okay. I'm really nervous." Detective Martin said, "Oh I'm sorry. Am I makin' you nervous?" Defendant replied no.

*Woodhouse*, 2016 WL 3126236, *8 (footnote omitted); *see also* CT 1054-1056.

7

interview (i.e., almost 70 pages after the start of the transcript of the interview) and after Petitioner had already made multiple admissions. *See* CT 1122. In contrast, the factual basis for the *Miranda* claim presented to the California Supreme Court on direct appeal involved statements made at the *beginning* of the interview, during which Petitioner claimed Detective Martin minimized the importance of *Miranda* rights. *See* CT 1054-1056. In his petition for review, Petitioner focused on arguing that his statements inadmissible because his implied waiver of his *Miranda* rights was not knowing, intelligent, and voluntary. *See* Resp't Ex. B. Specifically, Petitioner requested review to be granted by the California Supreme Court "to settle the important question of law of whether a police procedure that is intended to minimize and trivialize the importance of *Miranda* warnings and their application to the individual being questions can ever be constitutional . . . ." *See id.*; Dkt. 10-1 at 37-38. Petitioner did not argue in the petition for review that his statements were inadmissible because he made an unambiguous invocation of his right to counsel. *See* Ex. B. Under these circumstances, it cannot be said that Petitioner provided the California Supreme Court with a fair opportunity to apply controlling legal principles to the facts bearing upon his federal claim. *See Anderson*, 459 U.S. at 6; *see also Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir 2000) (federal claim not fairly presented to state courts if claim in federal petition and claim presented to state courts arose under same constitutional provision but are logically distinct or are based on different and unrelated lines of precedent). As mentioned above, mere similarity of claims is not enough. *See Duncan*, 513 U.S. at 366.

Accordingly, the sole *Miranda* claim in the instant petition is unexhausted because it was not considered on the merits by the California Supreme Court and thus it was not "fairly presented" to the state courts. *Picard*, 404 U.S. at 275. As such, Petitioner has not yet "reach[ed] the point where he has no state remedies available to him." *Peterson*, 319 F.3d at 1156. Therefore, the Court GRANTS Respondent's motion to dismiss the petition as unexhausted. Dkt. 10. The petition is DISMISSED without prejudice to refiling after Petitioner exhausts available state court remedies by fairly presenting his claim in a habeas petition to the California Supreme Court.

## III. CONCLUSION

For the reasons stated above, Respondent's motion to dismiss is GRANTED. Dkt. 10. The instant petition is DISMISSED for failure to exhaust state court remedies. *See Rose*, 455 U.S. at 510. This dismissal is without prejudice to Petitioner's returning to federal court after exhausting his state court remedies.

The Clerk of the Court shall terminate all pending motions and close the file.

This Order terminates Docket No. 10.

IT IS SO ORDERED.

Dated: January 22, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge